JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Stephen P. Curtis, Libertarian Party of New Mexico, Chris Luchini and Ranota Q. Banks

## DEFENDANTS
Maggie Toulouse Oliver, in her official capacity only as the New Mexico Secretary of State

**(b)** County of Residence of First Listed Plaintiff: Bernalillo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Santa Fe
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephen P. Curtis, Stephen P. Curtis, Attorney at Law, P..C. 6747 Academy Rd. NE, Ste. D, Albuquerque, NM 87109 505-884-9999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☒ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | | **Other:** / ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983

Brief description of cause:
Deprivation of right to vote and to have votes counted

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: July 23, 2020
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHEN P. CURTIS,

LIBERTARIAN PARTY OF NEW MEXICO,

CHRIS LUCHINI

and

RANOTA Q. BANKS,

    Plaintiffs,

v.

MAGGIE TOULOUSE OLIVER
325 Don Gaspar, Suite 300
Santa Fe, NM 87501
*In her official capacity only as the
New Mexico Secretary of State*

### PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Introduction

1. This lawsuit challenges the practices of the Defendant and her office in connection with the 2020 primary election process, and the write-in candidacy of Stephen P. Curtis for Court of Appeals Judge. The candidacy of Mr. Curtis was backed by the New Mexico Libertarian Party, who organized and spent resources around that race. The evidence indicates that the usage of certain voting systems, in particular counties, failed to count write-in votes that were actually cast for Mr. Curtis, leaving Mr. Curtis just a few votes short of making the cutoff. In other words, if the ballots were counted, Mr. Curtis would have achieved the threshold to move on to the general election. Defendant and her staff were aware of these issues, and persisted in ignoring them. Even worse, when Mr. Curtis demanded a recount, they demanded that he pay over $3,4100,000 to vindicate the

1

recount of the few libertarian ballots at issue. Their actions, and the application of New Mexico law that enabled them, are unconstitutional as applied.

Parties

2. Plaintiff Stephen P. Curtis is a duly registered Libertarian voter in New Mexico, and was and is a candidate for New Mexico Court of Appeals. He brings this challenge as both a Libertarian voter, and the candidate for New Mexico Court of Appeals. Stephen P. Curtis cast a ballot for himself, but, on information and belief, his ballot was not counted.

3. Plaintiff Libertarian Party of New Mexico is New Mexico's third largest political party, which exists to run candidates for public office in New Mexico, and consists of groups of voters who have come together to achieve political objectives.

4. Plaintiff Chris Luchini is the Chair of the Libertarian Party of New Mexico, who brings this challenge as a registered voter in New Mexico, who cast a ballot for Mr. Curtis, and who, it appears, did not initially have his ballot counted.

5. Plaintiff Ranota Q. Banks is a duly registered Libertarian voter who cast a ballot for Mr. Curtis, and who did not have her ballot counted.

6. Defendant Maggie Toulouse Oliver is the New Mexico Secretary of State who, among other things, has statutory responsibilities for the administration and enforcement of New Mexico's election laws. She is sued in her official capacity only.

Jurisdiction and Venue

7. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

8. Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiffs' Constitutional Rights occurred in counties within this District, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District

Facts underlying all claims

9. Mr. Curtis filed to run and qualify as a Libertarian candidate for Court of Appeals Judge. To move on to the General Election, he needed to obtain 230 write-in votes.

10. Due to concerns about holding an in-person election during the coronavirus pandemic, and pursuant to a Supreme Court order, the Secretary of State's office mailed applications for absentee ballots to all voters registered with a major party in the State of New Mexico in or about May, 2020.

11. On May 5, 2020, early voting opened in the 2020 primary elections.

12. On June 2, 2020, the primary election was formally held, and the unofficial results were announced.

13. Approximately 1,570 ballots were cast in the Libertarian Party primary election in New Mexico.

14. Prior to that election, the Libertarian Party of New Mexico spent resources to promote Mr. Curtis' race, by undertaking an expensive direct mail campaign to its registered voters.

15. The feedback that the party received from its members reveals that numerous voters, well above the 230-vote threshold, cast votes for Mr. Curtis.

16. Unofficial returns reflected that Stephen P. Curtis did not receive the 230 write-in votes required to be put on the general election ballot as the Libertarian Party's nominee for Court of Appeals.

17. The total votes reflected for Mr. Curtis on the "Unofficial results" page on the Secretary of State's website fluctuated, and increased by several votes between when the unofficial results were first reported on June 2, 2020, and when the State Canvassing Board met on June 23, 2020, to certify the results of the primary election.

18. There is significant and substantial evidence that write-in votes for Mr. Curtis were not correctly tallied. For example, a Bernalillo County website reflects that 270 write-in votes were case in the Libertarian Party Primary for Court of Appeals. Mr. Curtis was the only write-in candidate in that election. Mr. Curtis Received zero (0) votes from the 170 machine tallied Absentee ballots, and one (1) vote from the 'hand counted' Absentee Ballots. All of the remaining 40 votes came from the 100 in person, or early ballots. However, the Secretary of State's office and State Canvassing Board only credited Mr. Curtis with 41 votes from Bernalillo County.

19. Similarly, in Los Alamos, Mr. Curtis was initially reported to only have received 4 write-in votes, in the Los Alamos County Canvas. However, those numbers were later revised to reflect that he received 18 votes reported by the State Canvassing Board, more than four times the number initially reported.

20. Phone communication with the Los Alamos County Clerk, and the Clerk's staff revealed that the machine counted Absentee ballots were properly selected for review, and the votes tallied, however errors in the voting machines prevented those machine counted

Absentee Ballot results from being added to the in person and early voting totals. Los Alamos County detected this error before the meeting of the State Canvassing Board.

21. The voting errors with the machines in Los Alamos County permeated throughout the state. Rather than directing the county clerks throughout New Mexico to go back and recount these ballots, Defendant, aware of these voting machine errors, deliberately ignored these errors statewide, and undercounts for Mr. Curtis permeated the state.

22. In the end, as a result of the Defendant's malfeasance, and despite her awareness of voting machine errors, including those in Los Alamos County, Mr. Curtis was credited with receiving only 204 votes by Defendant, 26 votes short of the number required.

23. On June 19, 2020, the Chair of the Libertarian Party of New Mexico e-mailed the Secretary of State's office to advise them that the Stephen P. Curtis campaign intended to seek a recount of the primary election, and inquired what amount would need to be deposited for the recount.

24. In an apparent attempt to "run out the clock", the Secretary of State did not respond to this inquiry.

25. Also on June 19, 2020, Stephen P. Curtis e-mailed the Secretary of State's office, stating that he intended to apply for a recount and inquiring what the estimated cost of the recount would be.

26. In an apparent attempt to "run out the clock", the Secretary of State did not respond to this inquiry.

27. On June 25, 2020, Mr. Curtis submitted a letter to the Secretary of State's office, applying for a recount of the primary election results, and requesting that the Secretary of

State's office notify him the amount of cash or surety bond that would need to be deposited with the Secretary of State's office to accomplish the recount.

28. In yet another apparent attempt to "run out the clock", the Secretary of State did not respond to this inquiry.

29. On June 29, 2020, the Chair of the Libertarian Party of New Mexico sent an e-mail to the Secretary of State's office, requesting the wiring instructions for the recount deposit.

30. On June 29, 2020, at 4:46 PM, the Secretary of State's office provided wiring instructions for the first time, and also, for the first time, stated that a deposit of $3,573,400 would be required to complete the recount. This request amounted to a demand that the Stephen P. Curtis campaign deposit approximately $2,276.05 per ballot to be recounted. The Secretary of State's office stated by e-mail that the fund would not need to be received that day.

31. On July 1, 2020, Mr. Curtis sent an e-mail to the Secretary of State's office limiting the requested recount to seven counties that appeared to have the greatest irregularities in their vote totals. Those counties were Bernalillo, Sandoval, Dona Ana, Santa Fe, San Juan, Chaves, and Los Alamos. Approximately 1,145 votes were cast in the Libertarian Party primary in those seven counties.

32. On July 1, 2020, funds were wired to the Secretary of State's office in the amount of $23,800, amounting to $3,400 per county for which the recount was requested. This amount was calculated based on the understanding that in 2018, a Libertarian candidate for governor had secured a recount by depositing $3,400 per county to be recounted.

33. On July 2, 2020, the Secretary of State's office sent a letter denying the application for a recount, asserting that the funds tendered were untimely and insufficient to cover the required amount of the deposit.

34. The voting machines in use in the challenged counties require additional steps to be taken to count write-in votes, which were not taken. Defendant was aware of these issues, yet refused to direct the County Clerks to conduct the additional steps to ensure that the write-in votes were counted.

35. N.M. Stat. Ann. § 1-14-15 requires a bond or cash to be posted to cover the cost of any recount proceeding. Defendant has required the full amount to be posted for each precinct, in the amount of $3,573,400, even though there are only 1,570 ballots at issue that would yield additional votes (those from the Libertarian primary election). In other words, the Defendant is requiring Plaintiffs to post a bond of $2,276 per ballot to recount, when there is substantial evidence of errors affecting the outcome of the election.

36. Plaintiffs obtained quotations for bonding the amount in question; as it turns out, the bonding requirement actually requires obtaining more than $3,573,400, since the bond is treated as a supersedeas bond and requires coming up with more than the base amount.

37. Finally, and relevant to the analysis here, the Defendant, and the State of New Mexico, also restrict the Plaintiffs ability to fundraise the amount in question, with fundraising limitations. N.N. Stat. Ann. § 1-19-25 to 1-19-36.

38. In effect, these requirements foreclose all but extremely wealthy candidates.

## CLAIM I – FIRST AMENDMENT (42 USC 1983)

39. Plaintiffs reincorporate the foregoing paragraphs as if fully written herein.

40. The First Amendment of the U.S. Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech..." The Fourteenth Amendment has incorporated the First Amendment to apply to the states, including the State of New Mexico, under *Gitlow v. New York*, 268 U.S. 652 (1925).

41. Defendant abused the authority of her office and, while acting under color of law and with knowledge of Plaintiffs' established rights, used her office to violate their First and Fourteenth Amendment rights.

42. The burden in question to post a multi-million-dollar bond or cash, to obtain a recount to vindicate the candidate's and voters' interests, particularly with substantial evidence of error, imposes a severe burden on the Plaintiffs' associational interests, and the rights of voters to cast ballots. *Anderson v. Celebrezze*, 460 U.S. 760 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). As such, strict scrutiny was triggered, and the requirement in question is not necessary or narrowly tailored to meet any state interest.

43. In the alternative, if the Court finds that the recount provision, facially and as applied to Plaintiffs, does not constitute a severe burden on the rights of the Plaintiffs, then they constitute more than a minimal burden, and do not pass muster under the flexible analysis that weights the burdens of Plaintiffs against the State's asserted interest and chosen means of asserting it, under the prevailing U.S. Supreme Court cases of *Anderson*, 460 U.S. 760 and *Burdick*, 504 U.S. 428.

## CLAIM II – EQUAL PROTECTION (42 USC 1983)

44. Plaintiffs reincorporate the foregoing paragraphs as if fully written herein.

45. The Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of laws."

46. Under *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666 (1966) "a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard." N.M. Stat. Ann. § 1-14-15 is such a standard and violates equal protection.

47. Further, "falsely certifying the count, deprived qualified voters of that right and of the equal protection of the laws guaranteed by the Fourteenth Amendment." *United States v. Classic*, 313 U.S. 299, 310, 315 (1941).

48. "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental." *Bush v. Gore*, 531 U.S. 98, 104, (2000) (per curiam). The right to vote necessarily includes the right to have the vote fairly counted. *See Reynolds v. Sims*, 377 U.S. 533, 554 (1964) ("[Q]ualified voters have a constitutionally protected right . . . to have their votes counted. (*citing United States v. Mosley*, 238 U.S. 383, 386 (1915))); *Classic*, 313 U.S. 299, 315 (right to vote includes right of "qualified voters within a state to cast their ballots and have them counted").

49. Defendant's actions have deprived the voters for Mr. Curtis of their right to vote, despite knowledge of voting machine errors that were not counting votes, and in violation of equal protection of law.

### CLAIM III- DUE PROCESS

50. Plaintiffs reincorporate the foregoing paragraphs as if fully written herein.

51. Due process is implicated "[i]f the election process itself reaches the point of patent and fundamental unfairness." *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978); *see also Marks v. Stinson*, 19 F.3d 873, 888 (3d Cir. 1994) ("[R]ejection of a ballot where the

voter has been effectively deprived of the ability to cast a legal vote implicates federal due process concerns.").

52. Defendant's actions have deprived the voters for Mr. Curtis of their right to vote, despite knowledge of voting machine errors that were not counting votes, and in violation of due process.

## GENERAL ALLEGATIONS

53. Plaintiffs have and continue to have their fundamental constitutional rights violated by the official capacity Defendant, who is personally involved with the enforcement and/or threatened enforcement of the challenged orders. Plaintiffs will be irreparably harmed if injunctive relief is not issued. Further, the public interest is served by the vindication of constitutional rights, and the weighing of harms warrants issuing injunctive relief.

### Generally

54. Defendant abused the authority of her office and, while acting under color of law and with knowledge of Plaintiffs' established rights, used her office to violate Plaintiffs' Constitutional rights, privileges, or immunities secured by the Constitution and laws.

55. Thus, under 42 U.S.C 1983, Plaintiffs seek declaratory relief and injunctive relief. Pursuant to 42 U.S.C. 1988, Plaintiffs further seek their reasonable attorney fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant as prayed for, including:

A. That this Court issue a declaration that the challenged statute and the practices of Defendant are unconstitutional.

B. That this Court enter a restraining order, preliminary injunction, and permanent injunctive relief to prohibit enforcement of the challenged statute and the practices of Defendant, and to direct that the recount occur.

C. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

D. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

STEPHEN P. CURTIS,
ATTORNEY AT LAW, P.C.

By: /
Stephen P. Curtis, Esq.
CAID 78/162
6747 Academy Road NE, Suite D
Albuquerque, New Mexico 87109
(505) 884-9999
abqcurtis@gmail.com

Respectfully Submitted,

/s/Christopher Wiest
Christopher Wiest (KBA 90725)[1]
25 Town Center Blvd, STE 104
Crestview Hills, KY 41017
513-257-1895 (v)
chris@cwiestlaw.com
*Attorney for Plaintiffs*

---

[1] Mr. Wiest is in the process of applying for admission under L.R. 83.2 and L.R. 83.3.

11