**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**STEPHEN P. CURTIS,**
**LIBERTARIAN PARTY OF NEW MEXICO,**
**CHRIS LUCHINI**
**and**
**RANOTA Q.BANKS,**

        **Plaintiffs,**

**v.**                                        **1:20-cv-00748-JB-JHR**

**MAGGIE TOULOUSE OLIVER,**
**in her official capacity as Secretary of State of New Mexico,**

---

**SECRETARY OF STATE'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

      Plaintiffs request a preliminary injunction that would operate as a final judgment to order a discretionary recount of the 2020 Primary Election even though Plaintiffs have failed to submit a timely application for recount and deposit the requisite sufficient cash or sufficient surety bond pursuant to New Mexico law. If this Court directs the Defendant, a state officer, to direct the State Canvassing Board, a state board, pursuant to a discretionary state law, the Plaintiffs will obtain their desired relief without success on the merits, a result that would irrevocable alter the integrity of the election process in New Mexico.

      This type of preliminary injunction, that resolves the entire litigation, requires an exceedingly high showing to obtain, including clear and unequivocal evidence of the four elements for preliminary injunction.  First, Plaintiffs have not established a substantial likelihood they will prevail on the merits, as their claimed right relates to a New Mexico statutory right to a discretionary recount of an election and not a constitutional right. Nor have Plaintiffs demonstrated that the State and the public would be unharmed by this Federal Court issuing an order directing a

discretionary recount pursuant to state law to be paid for by the public, based on unsupported claims from a candidate who did not qualify for the general election after having his votes already canvassed and certified once pursuant to the Election Code.

### Overview of the Case

1. Stephen P. Curtis ("Plaintiff") was a write-in Libertarian candidate for New Mexico Court of Appeals Position 2.

2. As an unopposed write-in candidate, Plaintiff needed 230 votes to be certified by the state canvassing board. *See* N.M. Stat. Ann. § 1-13-24(C).

3. On June 23, 2020, the State Canvassing Board met and approved the report of the canvass and declared the results of the nomination of each candidate voted upon by the entire state, pursuant to N.M. Stat. Ann. § 1-13-15.

4. On June 23, 2020 the State Canvassing Board certified all nominations for candidates for New Mexico Court of Appeals Position 2.

5. On June 23, 2020, the State Canvassing Board also ordered the automatic recount of four candidate contest pursuant to N.M. Stat. Ann. § 1-14-24.

6. After the completion of the canvass, and the declared election results were certified, Plaintiff only obtained 204 votes, 26 votes short to qualify for nomination.

7. The New Mexico office of the Secretary of State ("SOS") had posted on its website the 2018 and 2020 recount cost determinations.[1] The 2020 recount cost determination has not changed from 2018.

---

[1] https://www.sos.state.nm.us/legislation-and-lobbying/legal-resources/cost-of-recount-recheck-proceedings/#

8. The estimated actual minimum cost per precinct for a recount as determined by the State Canvassing Board is $3,400 per precinct. [**Exhibit 1** - New Mexico State Canvassing Board Cost Determinations – Estimated Actual Cost of Recount & Recheck Proceedings]

9. On June 25, 2020, the SOS received correspondence from Plaintiff "constituting" an application of a statewide recount and contesting the published cost determinations for such a recount. [**Exhibit 2 –** Ltr. from Curtis to SOS re Libertarian Primary Recount]

10. On June 29, 2020, Deputy Election Director, Alicia Romero, responded to correspondence from Mr. Luchini stating that Mr. Curtis has not qualified as a candidate and that based on the approved cost determination, the cost of a statewide recount of all precincts with Libertarian votes cast, would be $3,573,400. Ms. Romero also provided the routing number to submit such payment. [**Exhibit 3 –** email from Romero to Luchini regarding cost of election recount]

11. On Monday June 29, 2020, Mr. Luchini sent an email purportedly from Mr. Curtis amending the application for a statewide recount to a list of 182 precincts to be recounted, and indicated that there was a discrepancy between the county canvass report and the state canvass report. [**Exhibit 4** – email from Luchini to Alicia Romero relating to change in precincts]

12. Based on the cost determinations published by the State Canvassing Board, and available on the SOS website, the minimum cost to conduct a recount of 182 precincts would cost $618,800.

13. On Tuesday June 30, 2020, Mr. Luchini confirms that a wire transfer had not yet been received by the SOS, and brings up a "systematic error with a reporting from the machines

used to tabulate late absentee ballots." [**Exhibit 5 –** email from Luchini to Romero re wire transfers]

14. On June 30, 2020, at 5:00, Mr. Luchini confirms the funds have been transferred but indicates that the full estimated costs have not been submitted and erroneously claims that the Libertarian party must only pay $3,400 per precinct board instead of per precinct, not the statutory amount based on per precinct recount pursuant to Section 1-14-15(A). [**Exhibit 6** – email from Luchini to Romero relating to transfer of funds]

15. On July 1, 2020, Mr. Curtis sent a letter to sos.elections@state.nm.us constituting a new recount application from his previous June 25 statewide recount application, stating that the recount should be limited to Bernalillo, Sandoval, Doña Ana, Santa Fe, San Juan, Chaves, and Los Alamos. This letter also alleges a voting machine error Plaintiff believed constituted a free recount and not at the expense of the Libertarian Party. [**Exhibit 7** – Ltr. from Curtis to SOS requesting a change in the recount precincts]

16. On July 1, 2020, $23,000 was wired to the SOS. This constituted $3,400 per county precinct board for which recount was requested. [*Ver. Compl.* ¶ 32 (ECF Doc 2)]

17. On July 2, 2020 the SOS sent correspondence to Plaintiffs stating that the Plaintiffs' applications for recount were not timely or complete. The correspondence further stated that the June 25 application was incomplete because it did not include a sufficient cash deposit or surety bond and the second or amended application on July 1, was untimely. [**Exhibit 8** – Ltr. from Herring to Curtis re response to recount application]

18. Instead of filing a mandamus proceeding in the New Mexico Supreme Court, specifically provided for in the Election Code pursuant N.M. Stat. Ann. § 1-14-21, on July 28, 2020,

Plaintiffs' filed their Verified Complaint for Declarative and Injunctive Relief in US District Court of New Mexico. [**ECF Doc 2**].

19. Defendant in this case was served a copy of this Verified Complaint via certified mail on August 3, 2020.

20. On July 29, 2020 The Plaintiff's filed the Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). [**ECF Doc 7**].

21. Defendant in this case was served a copy of this Verified Complaint via certified mail on August 3, 2020.

22. From August 3 to August 5, 2020 the SOS conducted its statutorily required election training of county clerks on the administration of election officials. *See* N.M. Stat. Ann. § 1-2-5

## MEMORANDUM OF LAW

### I.    Relevant New Mexico Election Law Background

This case turns on the interpretation and application of N.M. Stat. Ann. Sections 1-14-14 and 1-14-15. However, in providing a full context of the New Mexico law implicated in the canvassing and post canvassing process the SOS highlights the following:

Each county canvasses its own election results, approves the report of the canvass, and declares the results no later than ten days from the election. *See* N.M. Stat. Ann. § 1-13-13. Guidance is provided to all county clerks on what constitutes a valid vote and is to be read in concert with NMSA 1978, Section 1-1-5.2, to provide statewide uniformity to election administrators in determining the "intent of the voter" to diminish the chances for voter

disenfranchisement by broadening the universe of valid ballot markings. This guidance includes validating a write-in candidate.

After the county canvass report is complete, the SOS prepares the report of the state canvass directly from the county canvass reports. The State Canvassing Board meets on the third Tuesday after each statewide election and approves the report of the canvass and declares the results of the nominations of each candidate voted upon by the entire state, pursuant N.M. Stat. Ann. § 1-13-15. Upon the approval of the report of the state canvass, the SOS issues, to those entitled by law, the certificate of nomination. *See* N.M. Stat. Ann. § 1-13-16(B).

The Election Code provides for automatic recounts under specific circumstances and the SOS pays for the cost of the automatic recount. *See* N.M. Stat. Ann. §§ 1-14-24(A) and 25. The Election Code provides a candidate an avenue for a discretionary recount or recheck after the certification of the election results if they submit an application "within six days after completion of the canvass by the proper canvassing board." *See* § 1-14-14(A). A discretionary recount also mandates that an applicant for a recount "deposit with…the Secretary of State sufficient cash, or sufficient surety bond, to cover the cost of the recount for each precinct for which a recount is demanded." *See* § 1-14-15(A). The State Canvassing Board must determine the estimated actual cost of a recount per precinct and a recheck per voting machine, and the SOS must post the recount and recheck cost determinations on the SOS website when the state canvassing board issues its cost determinations. *Id*. If no error or fraud appears to be sufficient to change the winner, the costs and expenses for the recount or recheck shall be paid by the applicant. § 1-14-15(D). A recount "pertains to all paper ballots, including absentee ballots, provisional paper ballots, optical scan paper ballots and any other paper ballot and means a verification procedure whereby the voters'

selections for an office are retallied and the results compared with the results shown on the official returns." N.M. Stat. Ann. § 1-1-6.

Immediately after filing of the application for recount or recheck, or notice of an automatic recount, the appropriate canvassing board shall issue an order to the county clerk of each county were a precinct specified in the application or notice is located commanding the county clerk to convene a recount precinct board. *See* N.M. Stat. Ann. § 1-14-16(A). Article 14 of the Election Code further provides a statutory right of action to the New Mexico Supreme Court for mandamus if the "state canvassing board, the county canvassing board, secretary of state, county clerk or any member of a precinct board fails or refuses to do or perform any of the acts required of them pertaining to recounts or rechecks, the applicant for recount or recheck may apply to any district court, the court of appeals or the supreme court of New Mexico for writ of mandamus to compel the performance of the required act and such court shall entertain such application." § 1-14-21

## II.    Standard for Issuing a Temporary Restraining Order

The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order. *Herrera v. Santa Fe Pub. Sc*h., 792 F.Supp.2d 1174, 1181 (D.N.M. 2011). A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries the burden of showing a right to relief that is clear and unequivocal. *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016); *Schrier v. University of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005). To obtain a preliminary injunction the moving party must demonstrate four elements: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). *See also Herrera*, 792 F.Supp.2d at

1181 (citing Resolution *Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Preliminary injunctions are particularly disfavored if they: (1) alter the status quo; (2) are mandatory preliminary injunctions; and/or (3) afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *RoDa Drilling Co*, 552 F.3d 1203, 1208. A party seeking a disfavored injunction must demonstrate a substantial likelihood of success on the merits and make a strong showing that the balance of harms tips in the movant's favor and the preliminary injunction is not adverse to the public interest. *Id.* at 980.

All three types of disfavored injunctions are implicated by Plaintiffs' Motion. First, Plaintiffs seek to disrupt the status quo that existed when the dispute arose. Since Section 1-14-15 was amended in 2007, the Defendant has been calculating sufficient costs of a recount election pursuant to the cost estimation of the State Canvassing Board for all applicants regardless of party. Plaintiffs seek to alter this dynamic between candidates for election by requesting an injunction declaring the Section 1-14-15 unconstitutional.   Second, the requested injunction is also mandatory, as it requires the SOS to order a recount of Libertarian ballots in a statewide race. Finally, and most crucially, the requested injunction would have the effect of deciding the merits of the dispute. Plaintiffs seek to have a recount ordered free of charge. If the Plaintiff's motion is granted, an order will be issued and a recount would commence, and any adjudication on the merits would be academic.

Therefore, Plaintiffs must meet the extraordinary burden of establishing by clear and unequivocal evidence, that they satisfy all four elements necessary for a preliminary injunction.

Given the disfavored nature of the injunction they seek, any doubts should resolve in Defendants' favor.

### III.    Plaintiffs Have Failed to Meet the Exceptional Burden Necessary.

Because Plaintiffs cannot make a "clear and unequivocal" showing of the four elements necessary for preliminary injunction, their motion should be denied. *See Wilderness Workshop v. BLM*, 531 F.3d 1220, 1224 (10th Cir. 2008). Given the extraordinary nature of the relief Plaintiffs seek, a failure to meet this high standard as to any element is fatal to their Motion.


### a.    Substantial Likelihood of Success on the Merits

Plaintiffs' have argued that Section 1-14-15(A) should be deemed unconstitutional, because it violates their First and Fourteenth Amendment rights. The main thrust of their argument is that the cost to conduct a statewide recount is too high and that in requiring such a high cash deposit facially and as applied violates these "stated rights." *See* Motion ¶ 39-55. Unfortunately, Plaintiffs have failed to articulate a constitutional right that has been burdened and have only implicated a state statutory right to a discretionary recount. *See Denton, State ex rel., v. Vinyard*, 1951-NMSC-030, ¶ 6, 230 P.2d 238, 239 ("The right of recount and contest are purely statutory."). Indeed, a discretionary recount of an election may be brought only because the state legislature has provided this option to candidates pursuant to the Election Code. Plaintiffs' attempt to mask a discretionary statutory right to a recount as a constitutional right related to ballot access although the Plaintiff was qualified for the ballot. If this Court stretches to find a constitutional right implicated, it clearly should be considered under the less exacting review of strict scrutiny, as the law is a reasonable post-election discretionary privilege that does not implicate ballot access.

Additionally, the cost provisions of a discretionary recount pursuant to state law are non-discriminatory and are reasonably based on the realities of conducting a recount per precinct throughout the state. This is the type of reasonable regulation that is routinely held to meet the less exacting review. Importantly to note further, is that the Plaintiffs have not submitted a timely application with the sufficient cash or bond necessary to even be entitled to relief if the court found the cost determination of Section 1-14-15(A) unconstitutional. As such, there is no redressability this court can grant. Therefore, it is clear that Plaintiffs cannot meet their extraordinary burden of clear and unequivocal evidence, and cannot prove a substantial likelihood of success on the merits.

    1. <u>Plaintiffs Fail to Show the Heightened Burden Required to Prevail on Constitutional challenges.</u>

Plaintiffs fail to prove strict scrutiny should be applied for any First or Fourteenth Amendment claim that has been offered due to New Mexico's discretionary recount provisions in Article 14 of the Election Code. It is important to highlight upfront that this is not a ballot access case, as Plaintiff Curtis qualified as a candidate for the 2020 Primary Election. Section 1-14-15 is a statutory right for candidates who wish to pay for a recount if an automatic recount is not triggered to have specific precincts recounted. Additionally, Plaintiffs fail to show that Section 1-14-15 is anything but a reasonable non-discriminatory regulation which necessarily requires a less exacting review.

In detailing the standard for evaluating First and Fourteenth Amendment claims regarding ballot access and voting rights, the Supreme Court has explained:

> It is beyond cavil that "voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). It does not follow, however, that the right to vote in any manner and the right to associate for political

purposes through the ballot are absolute. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986). The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections. *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986). Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).

*Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Accordingly, the Supreme Court has instructed that a district court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-14 (1986). "But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Id*.

Although Defendant believes it is clear that there is no constitutional right to a discretionary statutory recount of an election, Section 1-14-15(A) as written is non-discriminatory and reasonable for which *Anderson* dictates that it is subject to a "less exacting review." Section 1-14-15 cost determinations are reasonable because they are approved to reflect the minimum costs a recount requires and are approved by the State Canvassing Board. Instead of complying with this nondiscriminatory and reasonable cost determination, Plaintiffs argue that the cost for a

discretionary recount should be lower than the state standard based on the fact that there are far fewer registered Libertarian voters than those who are registered with the other major parties in the State. This type of disparate treatment would violate the plain language of Section 1-14-15(A) and implicate other candidates' Fourteenth Amendments rights under the constitution as applied. The recount of an election must strictly comply with state law and reflect the realities of what a recount cost the state to conduct, as outlined in the 2020 cost determinations. Requiring this Court or the SOS to lower that cost is improper particularly because such regulation is clear reasonable on its face.

The State has an important regulatory interest in ensuring there is adequate security deposited pursuant to Section 1-14-15(B), as a recount is costly, time consuming-especially this late after the certification of the election results-and there is a need for finality of an election results. Although Plaintiffs cite cases regarding excessive costs implicating First and Fourteenth Amendment rights in the "election arena," none relate to a statutory discretionary recount election cost and none have been similarly situated as Plaintiffs' in which, as here, Plaintiffs, post-election, have failed to comply with the other state law requirements in seeking relief from the Court; namely to submit a complete and timely application for recount or pay sufficient cash to conduct a discretionary recount pursuant to state law. As such, the Court should look skeptically when considering such arguments that strict scrutiny apply and must address whether a constitutional violation has actually been plead.

2. <u>Plaintiffs Fail to Establish A Violation Of First Amendment Right</u>

To begin with Plaintiffs' request a preliminary injunction, directing the recount in Bernalillo, Sandoval, Dona Ana, Santa Fe, San Juan, Chaves, and Los Alamos to be ordered. *See*

Motion pg. 13. This is based on Plaintiffs' believe that Section 1-14-15(A) is unconstitutional as the cost for a discretionary recount is excessive and violates its First Amendment Rights. However, Plaintiffs' do not, and cannot, allege any constitutional right to a statutory discretionary recount of an election, and as such they fail to establish a violation has occurred.

The discretionary recount is a privilege of state law and is applicable only after every candidate has had their votes in the election canvassed and certified at least once. The cases cited by Plaintiffs', dealing with excessive filing fee requirements, do not relate to the costs of a discretionary recount election and their holdings are based broader rights associated with ballot access in the first instance, not rights associated with post-election state regulatory interest. As such, without a showing of a constitutional right to a discretionary recount, they have failed to plead First Amendment claim for which relief can be granted from this Court.

Plaintiffs' also offer in the alternative that the costs determination it deems excessive should be based on each county recount precinct board rather than each precinct canvassed. This determination is not based in law or the realities of how votes are canvassed under New Mexico state law. *See* N.M. Stat. Ann. § 1-13-4 (county clerks prepare canvass report based on examining each precinct). The cost amount for a recount precinct board is not the standard for costs of a discretionary recount, rather the cost determination is based on each precinct as stated in the election code. Therefore, to post a valid deposit of cash or bond the applicant must provide this security based on the per precinct cost of the desired recount. Plaintiffs' should not be able to substitute their own cost determinations for a recount when the State Canvassing Board has determined the specific costs for a recount accounting to state law and is based on the realties that a recount and canvass is based on a precinct by precinct review of votes cast. Although Plaintiff's believe $3,400 per precinct charge is high price, it thoughtfully reflects the realities of the work

and cost of an actual recount under the laws of New Mexico and is what the State pays for its canvass of the election. Therefore, requiring the same cost that is charged to the state for a recount is reasonable given the fact that there is no constitutional right to a statutory recount and promotes an important regulatory interest.

Plaintiff's First Amendment claim also fails this strict standard because it fails to acknowledge the protections guaranteed to New Mexico voters to ensure their elective franchise is protected based on the broad and automatic recount laws in the State. Since 2008 New Mexico has ensured election contests are recounted automatically, if the margin between two candidates receiving the greatest number of votes for an office is within one percent of the total votes cast. *See* § 1-14-24. In 2019, the legislature expanded the automatic recount provision to include local elections and ballot questions. *Id*. Therefore, New Mexicans First Amendment rights to elective franchise are protected by the broad automatic recount provisions pursuant to Section 1-14-24. However, the subject of this case is not the automatic recount law provided to protect Plaintiffs' asserted First Amendment rights, but rather the discretionary recount provisions that are provided only to candidates for public office whose race doesn't trigger the automatic recount provisions. Before a recount can be ordered, all election results are certified by the county clerks, checked by the SOS and checked again by an independent auditor, and certified again by the State Canvassing Board before results are official. This is all done to ensure all New Mexicans' First Amendment rights are protected. The discretionary recount provision is a statutory privilege offered to candidates if they wish to comply with the state law if they pay sufficient cash and is requested timely. Such a law is not constitutionally guaranteed and even if there was it is clear that the cost determinations are non-discriminatory and reasonable and are based on important regulatory

interest of the state. As such, Plaintiffs cannot meet the exception burden necessary to show a likelihood of success.

### 3. Plaintiffs' Fail to Establish a Violation of Equal Protection or Due Process

Plaintiffs allege equal protection violations facially and as applied. Plaintiffs focus their challenge to the cost determinations of a discretionary recount and an allegation of voting machine error. It is important to reiterate first that the costs determinations established by the State Canvassing Board are reasonable, non-discriminatory and are based on the realities of the costs needed to conduct a legally sufficient recount. The Plaintiffs cannot argue otherwise. The Court's inquiry needs to go no further on the reasonableness of the actual document which explains the cost determination by the State Canvassing Board. *See* **Exhibit A** pg. 3.

This document explains in detail the estimated actual minimum costs to conduct a per precinct recount based on: election set up, vote tabulating system programing certification, vote tabulating system technical support and the required five member precinct board. *Id*. The cost determination is further broken down into hour and daily rates. *Id*. It further explains what that the actual cost of the recount will be and is based on whatever cost is lower between the hourly rate of the workers or a daily rate. *Id*. This cost determination is identical to any party requesting a discretionary recount. This is the type of reasonable restriction and regulation that Federal Courts have routinely upheld as required regulation by states to conduct uniform application of election law and apply the less exacting review of such regulation. *See* e.g. *Parker v. Duran*, 180 F. Supp. 3d 851 (D.N.M. 2015) (petition signature regulations do not violate the First or Fourteen Amendments to the US Constitution); *Arutunoff v. Okla. State Election Bd.*, 687 F.2d 1375 (10th

Cir.1982))(rejected an equal protection challenge to disparate signature requirements imposed upon independent and minor political parties.).

The Plaintiffs have further alleged a due process violation based on knowledge of voting machine errors in counting write-in ballots. Although the Defendant vigorously denies any allegation of voting machines errors that failed to count write-in votes and have specific facts to disprove such an irresponsible statement, even if that were true,  has little to do with the application of a discretionary recount provisions, but a more general concern regarding the canvass of the election. As it stands today, the Defendant is confident that all votes cast for every candidate have been determined and counted including write-in votes. Plaintiffs' metaphysical allegations would require three failures of review in the canvass process, but more importantly, even if were true, would not stand in the way of Plaintiffs' ability to have requested a timely discretionary recount pursuant to Section 1-14-15(A) or file an election contest. *See* N.M. Stat. Ann. § 1-14-3 (verified complaint must be filed thirty days from the issuance of the certificate of nomination). Unfortunately, based on Plaintiff's own in actions, they have failed to avail themselves of the statutory redress available to them.

Therefore, even if a full evidentiary hearing was held, the fact remains that whether or not Plaintiffs' Fourteenth Amendment rights were violated has no bearing on whether a recount application may be submitted pursuant to state law. In this instance, Plaintiffs' fail to plead any facts or claims to allow the Court to grant its specific request of ordering a discretionary recount based on their metaphysical beliefs that their Fourteenth Amendment rights have been violated.  If the Plaintiffs' are seeking a recount of the election outside of Section 1-14-15, Defendant is unaware of any state law that allows for such a recount at this late moment and the Federal Court is not the proper Court to direct such relief. *See ANR Pipeline*, 150 F.3d at 1188 ("federal courts

have no jurisdiction to entertain a suit that seeks to require [a] state official to comply with state law"). As such, NMSA 1978, Section 1-14-15 sufficient cost requirement is a reasonable regulation that is non-discriminatory.

One final note on due process, Plaintiffs' were put on notice that their application for recount was rejected on July 2, 2020. They could have filed suit in the New Mexico Supreme Court pursuant to Section 1-14-21. The New Mexico Supreme Court pursuant to Article VI, Section 3 of the New Mexico Constitution, has original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions. The New Mexico Supreme Court is the proper court to hear the claims alleged by Plaintiffs' regarding violations of state protections and the proper Court to command the actions of both the SOS and the State Canvassing Board to comply with state law and order a discretionary recount. By failing to file their suit in the proper Court, pursuant to the Election Code, Plaintiff's foreclosed their opportunity to timely adjudicate this matter based on their interpretation of what state law requires of state officers and boards in canvassing an election.

  4. <u>Plaintiffs' claims relating to Abuse of Public office are barred by Eleventh Amendment</u>

Plaintiff argues that the Defendant has not complied with state law in directing a discretionary recount based on unverified claims of voting machine errors. Again, this claim is not based in law but in Plaintiffs' misinformed belief of what the Election Code allows for. Such a basis for a recount is not provided for in the Election Code. This argument is akin to asking a Federal Court to adjudicate whether a state official did not comply with state law and such claims are barred by the Eleventh Amendment. If this claim is barred then of course the Plaintiff has not met his burden of showing a substantially likelihood of success.

The Eleventh Amendment bars suits for damages against a state or state agency absent congressional abrogation or waiver and consent by the state." *Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010). This provision creates an immunity which "applies to any action brought against a state in Federal court, including suits initiated by a state's own citizens," regardless of the relief sought. *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). However Eleventh Amendment immunity is not absolute. See *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 (1990). Consequently, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

The Defendant has only acted within its delegated authority to accept applications for a discretionary recount and ensure that sufficient cash or sufficient surety bond is secured, based on the cost determinations issued by the State Canvassing Board. There is no allegation that the SOS acted outside of its delegated authority and the Eleventh Amendment should bar this claim.

    b. *Plaintiffs' Have Failed to Make A Clear Showing That Irreparable Harm is Likely Absent an Injunction*

To establish irreparable harm, Plaintiffs must present specific, concrete evidence that they likely will be harmed absent a preliminary injunction. *See Winter*, 555 U.S. at 22 (plaintiffs seeking a preliminary injunction must make a clear showing that irreparable harm is likely absent an injunction). And the mere assertion of a First Amendment interest is insufficient to establish irreparable harm for preliminary injunction purposes. *See Socialist Workers Party v. Att'y Gen. of U.S.*, 419 U.S. 1314, 1319 (1974) (cannot be "indiscriminate willingness to enjoin" government "whenever a countervailing First Amendment claim is raised"); *Hohe v. Casey*, 868 F.2d 69, 72–

73 (3d Cir. 1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits.").

Plaintiffs have lost the election and there is no doubt that they have suffered that harm. However, they have not plead sufficient concrete evidence that their First or Fourteenth Amendment rights were harmed by either voting machine errors or the cost determinations of a discretionary recount after all of the votes for the primary election were counted and certified once already. They only offer vague, conclusory assertions of harm and foul play and the inability to pay for the recount of the election. This harm is clearly not particularized as required to establish irreparable harm. Such an argument for irreparable harm is further futile because Plaintiffs have already been denied their application for discretionary recount by Defendant, and as such, this Court cannot redress their injury. For even if the Court declares the cost provisions of Section 1-14-15(A) unconstitutional, Plaintiff's still could not proceed with a recount as there is no valid application to notice the State Canvassing Board to order a recount. As such, Plaintiffs have clearly not met their exceedingly high burden.

    c.   *The Requested Relief Irreparably Harms the State's Regulatory Interests and Is Against the Public Interest*

It is undisputed that the State has a compelling interest in preserving the integrity of its election process. Perhaps most clearly, Plaintiffs' Motion should be denied because it would subject the 2020 General Election, to unrelenting sore loser challenges to the election results at the expense of the public. Here if the Temporary Restraining Order is issued ordering a recount and Plaintiffs would not need to pay a sufficient cash amount to secure a recount, the state would be responsible for paying at least $618,800, the cost of the requested discretionary recount. The result would be astronomical costs to the state and the tax payers and federal courts have long held that

the "protection of the public fisc is a matter that is of interest to every citizen." *Brock v. Pierce Cty.*, 476 U.S. 253, 262 (1986). Plaintiffs' should not be permitted to unravel New Mexico's election law based on the glaring deficiencies of Plaintiffs case.

<u>**Conclusion**</u>

Defendant requests that this Court deny Plaintiffs Motion for Temporary Restraining Order; for granting it would resolve the case in their favor and more importantly Plaintiffs' have not met the exceedingly high burdens need establishing all four elements for such relief.

Respectfully Submitted,

**By: /s/ Dylan K. Lange**
Dylan Kenneth Lange
General Counsel
Office of the New Mexico Secretary of State
305 Don Gaspar, Suite 300
Santa Fe, NM 87501
(505) 827–3600
Dylan.Lange@state.nm.us

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 6, 2020, I served the foregoing on counsel of record for all parties via the CM/ECF system.

<u>*/s/ Dylan K. Lange*</u>
Dylan Kenneth Lange